IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WORKFORCE SOFTWARE, LLC,

            Plaintiff,

     v.

WORKFORCE.COM, INC.,
WORKFORCE IP LIMITED, and
HCMA, INC.,

           Defendants.

Case No. 20 C 7365

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Defendants Workforce.com, Inc., Workforce IP Limited, and HCMA, Inc. move to dismiss Workforce IP Limited pursuant to FED. R. CIV. P. 12(b)(2), to partially dismiss the First Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6), to strike portions of the First Amended Complaint pursuant to FED. R. CIV. P. 12(f), and for an extension of time pursuant to FED. R. CIV. P. 12(a)(4)(A). (Dkt. No. 32.) Plaintiff WorkForce Software LLC moves for jurisdictional discovery pursuant to FED. R. CIV. P. 12(b)(2). (Dkt. No. 36.) For the reasons stated herein, Plaintiff's Motion for Jurisdictional Discovery is denied. Defendants' Rule 12(b)(2) Motion to Dismiss is granted and Workforce IP is dismissed. Defendants' Rule 12(b)(6) Motion to Dismiss is granted as to Count VI and denied as to Counts I–V. Count VI is dismissed with

prejudice. Defendants' Rule 12(f) Motion to Strike is denied. Defendants' Motion to Extend Time is granted. Defendants shall file an answer to the First Amended Complaint within fourteen (14) days of the entry of this Order.

## I. <u>BACKGROUND</u>

This case arises out of a trademark dispute between Plaintiff WorkForce Software LLC ("WFS") and Defendants Workforce.com, Inc. ("WF.com"), Workforce IP Limited ("Workforce IP"), and HCMA, Inc. ("HCMA"). Both WFS and Defendants offer employee management software. (First. Am. Compl. ("Compl.") ¶¶ 13, 32, Dkt. No. 28.) WFS alleges that Defendants' WORKFORCE and Design marks closely resemble WFS's WORKFORCE SOFTWARE marks. (*Id.* ¶ 43.) Because the two sets of marks are used in connection with related products WFS alleges that their similarity is likely to cause "confusion, or to cause mistake, or to deceive consumers" as to the origin of the goods and/or services in violation of federal copyright law. (*Id.*)

### A. Plaintiff's Operations and Trademarks

WFS develops, markets, and sells computer software for timekeeping and employee management. (*Id.* ¶ 13.) WFS's software tracks, records, analyzes, and manages the time and activities of employees and other contractors or staff. (*Id.*) WFS also provides consulting services. (*Id.*) Since at least 1999, WFS has conducted its business under the following marks: WORKFORCE™, WORKFORCE

SOFTWARE©, and related marks containing the word "WORKFORCE" alone or the words "WORKFORCE SOFTWARE." (*Id.*) WFS alleges that it has common law rights in its WORKFORCE™ SOFTWARE marks as a result of its continuous and substantial use. (*Id.* ¶ 20.) WFS also owns the following Trademark registrations:

| Number | Trademark | Issued | Class |
|--------|-----------|--------|-------|
| 4,608,651 | WORKFORCE SOFTWARE® | 9/23/2014 | 42 |
| 4,681,022 | WORKFORCE SOFTWARE and Design® | 2/3/2015 | 42 |
| 4,830,531 | WFS A WORKFORCE SOFTWARE COMPANY and Design® | 10/13/2015 | 9,42 |
| 5,249,285 | WFS A WORKFORCE SOFTWARE COMPANY and Design® | 7/25/2017 | 9,35, 42 |

(*Id.* ¶¶ 21-25.) Trademarks registered in International Class 9 include instruments and equipment for information technology. Nice Classification, Eleventh Edition § 9, version 2021 (NCL 11-2021), United States Patent and Trademark Office, *https://www.uspto.gov/trademarks/trademark-updates-and-announce-ments/nice-agreement-current-edition-version-general-remarks* (last visited Oct. 6, 2021) ("Nice Classification"). WFS's Class 9 trademarks are used, *inter alia,* in connection with "computer software for timekeeping and workforce management." (Trademark Reg. No. 5,249,285 ("'285 Reg.") at 1, Compl., Ex. D, Dkt. No. 28-4.) International Class 35 trademarks include services rendered with the objective of helping "in the management of the

business affairs or commercial functions of an industrial or commercial enterprise." Nice Classification § 35 n.2. WFS's trademarks registered in Class 35 are used in connection with "business planning; business strategic planning services; business management consultancy as well as development of processes for the implementation of strategy plans and management projects; structuring, optimizing, and change management consulting related to timekeeping and scheduling; business organization and management consultancy including personnel management." (285 Reg. at 1.) Trademarks registered in International Class 42 include scientific and technological services, including the "design and development of computer hardware and software." Nice Classification § 42 n.1. WFS's Class 42 trademarks are used in connection with "Consulting services related to implementation of computer software and programs for others." (285 Reg. at 1.)

### B. Defendants' Operations and Trademarks

The history of Defendants' operations begins in the 1920's with the activities of the Defendants' predecessor-in-interest, Mediatec Publishing Ltd. ("Mediatec"). (Compl. ¶ 29.) At its founding, Mediatec did business as Human Capital Media and published and distributed the Journal of Personnel Research. (*Id.*) Mediatec later changed the name of its publication to "Workforce Magazine." (*Id.*) In February 1994, Mediatec registered the domain

name "<workforce.com>" and used the website to advertise, promote, and distribute Workforce Magazine. (*Id.* ¶ 31.)

In 2018, Mediatec obtained the following Trademark Registration:

| Number | Trademark | Class |
|---|---|---|
| 5,743,073 | WORKFORCE | 16, 41 |

(*Id.* ¶ 30.) Trademarks registered in International Class 16 include "mainly paper, cardboard and certain goods made of those materials, as well as office requisites." Nice Classification § 16 n.1. Mediatec's Class 16 trademark was used in connection with "printed publications, namely magazines, journals, and newsletters directed to the field of employment and human resources[.]" (Compl. ¶ 30.) Trademarks registered in International Class 41 include "services consisting of all forms of education or training, services having the basic aim of the entertainment, amusement or recreation of people, as well as the presentation of works of visual art or literature to the public for cultural or educational purposes." Nice Classification § 41 n.1. Mediatec's Class 41 trademark was used in connection with "online downloadable publications, namely magazines, journals, and newsletters directed to the field of employment and human resources." (Compl. ¶ 30.)

Defendant WF.com was originally founded under the name Tanda, Inc. in 2012 as an employee time and attendance software for employee management, timeclocking, and other related employee management services. (*Id.* ¶ 32.) In April 2019, Tanda, Inc. acquired Mediatec and its assets, including Trademark No. 4,219,648 (the "'648 Trademark") and the <workforce.com> domain. (*Id.* ¶ 33.) Following the acquisition, Tanda, Inc. changed the name its company to "Workforce," and is now operating as WF.com. (*Id.*) Around the time of the acquisition, Tanda, Inc. created Defendant Workforce IP, a United Kingdom Limited Liability Company, for the purpose of "hold[ing] and licens[ing] intellectual property worldwide for affiliated Workforce entities." (Schneider Decl. ¶ 2, Mot. to Dismiss Mem., Ex. A, Dkt. No. 33-1.) Defendant HCMA is a corporate affiliate of WF.com and Workforce IP. (Compl. ¶ 4.) The First Amended Complaint contains no additional information about HCMA's operations. Today, Workforce IP holds the '648 Trademark and licenses its use to WF.com and HCMA. (*Id.* ¶ 7.)

Following the name change, the <workforce.com> website was redesigned to offer Defendant WF.com's employee management software. (*Id.* ¶ 39.) The newly renamed company also began using their WORKFORCE and Design marks in connection with their employee management and timeclocking software. (*Id.* ¶ 37.) In October 2019,

Workforce IP filed U.S. Trademark Application Serial
No. 88/654,970 (the "'970 Application") with the United States
Patent and Trademark Office ("USPTO"). (*Id.* ¶ 36.) The '970
Application sought registration of the WORKFORCE and Design marks
in two classes: (1) International Class 9 for "use in connection
with downloadable software for employee management and
timeclocking" and (2) International Class 42 for "use in connection
with providing non-downloadable software for employee management
and timeclocking; Software as a Service ("SAAS") for employee
management and timeclocking." (*Id.*).

### C. The Trademark Dispute

In March 2020, WF.com and Workforce IP filed a Petition for
Cancellation with the USPTO, seeking cancellation of WFS's U.S.
Trademark Registration No. 4,608,651 (the "'651 Registration").
(*Id.* ¶ 45.) The '651 Registration covers the trademark for
WORKFORCE SOFTWARE®. (*Id.* ¶ 22.) The Petition for Cancellation
alleges that the WORKFORCE SOFTWARE® mark is generic. (*Id.* ¶ 45.)

On September 2, 2020, WFS filed a Notice of Opposition to
Workforce IP's '970 Application. (*Id.* ¶ 46.) In its opposition
filing before the USPTO, WFS alleged that it will be harmed by
registration of the WORKFORCE and Design marks because they are
used in connection with the same or related services as its own
marks. (*Id.*) One month later, on October 12, 2020 Workforce IP

- 7 -

filed its answer to WFS's Notice of Oppositions and, along with WF.com filed a counterclaim seeking cancellation of the '651 Registration. (*Id.*) Similar to the Petition for Cancellation, the counterclaim argues that the WORKFORCE SOFTWARE® registration is generic. (*Id.*)

On December 11, 2020 WFS filed the present action "to address Defendants' infringement of [WFS's] WORKFORCE™ SOFTWARE Marks and to fully and finally resolve the parties' dispute." (*Id.* ¶ 48.)

### D. Procedural Posture

WFS filed their original Complaint on December 11, 2020. (Dkt. No. 1.) On February 8, 2021, Defendants filed a Motion to Dismiss. (Dkt. No. 23.) In response, WFS filed the First Amended Complaint. (Dkt. No. 28.) The First Amended Complaint brings six claims. Counts I and II allege trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 (Count I) and the common law (Count II). Counts III and IV allege unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125 (Count III) and the common law (Count IV). Count V alleges Cybersquatting in violation of the Anti-Cybersquatting Piracy Act, 15 U.S.C. § 1125(d). Count VI seeks an order requiring Workforce IP and WF.com to withdraw the '970 Application pursuant to 15 U.S.C. § 1119.

Defendants filed the present Motion in response to the First Amended Complaint on March 15, 2021. (Dkt. No. 32.) Defendants'

Motion seeks the following remedies: (1) dismissal of Workforce IP for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2); (2) dismissal of Counts V and VI in their entirety for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6); (3) dismissal of Counts I–IV to the extent the basis of such claims is WFS's rights in the term "Workforce"; (4) an order striking improper legal argument and citations in the Complaint; and (5) an extension of time to file an answer to the First Amended Complaint. In response to the Rule 12(b)(2) portion of Defendants' Motion, WFS moved for leave to take limited jurisdictional discovery. (Dkt. No. 36.) The Court now decides both Motions.

## I. LEGAL STANDARD

A Rule 12(b)(2) motion challenges the Court's jurisdiction over one or more parties. When a defendant challenges personal jurisdiction under FED. R. CIV. P. 12(b)(2), the plaintiff bears the burden of proving that jurisdiction exists. *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). "Where, as here, the Court rules on a motion to dismiss for lack of personal jurisdiction based on the submission of written materials—and not based on evidence presented at an evidentiary hearing—the plaintiff 'need only make out a prima facie case of personal jurisdiction.'" *Bentel & Co., LLC v. Schraubenwerk Zerbst GmbH,* No. 16 C 11479, 2017 WL 3278324, at *4 (N.D. Ill. Aug. 2,

2017) (citing *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002)). In determining whether personal jurisdiction exists, the Court can look beyond the pleadings. *ABN AMRO, Inc. v. Capital Int'l Ltd.,* 595 F.Supp.2d 805, 818 (N.D. Ill. 2008). But any showing of jurisdiction must be "based on specific facts set forth in the record, rather than . . . conclusory allegations." *Page v. Democratic Nat'l Comm.,* 2020 WL 8125551, at *1 (N.D. Ill. Aug. 17, 2020) (quotation omitted). At this stage the Court accepts as true all well-pleaded facts alleged in the Complaint and will resolve any factual disputes in the affidavits in favor of Plaintiff. *Tamburo v. Dworkin,* 601 F.3d 693, 700 (7th Cir. 2010).

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[T]he plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *W. Bend Mut. Ins. Co. v. Schumacher,* 844 F.3d 670, 676 (7th Cir. 2016) (quotation omitted). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

## II. <u>DISCUSSION</u>

### A. Rule 12(b)(2) Motion to Dismiss Workforce IP

Defendants have moved to dismiss Workforce IP for lack of personal jurisdiction, pursuant to Rule 12(b)(2). In cases arising under federal law, such as this one, the Court may exercise personal jurisdiction over a defendant if "either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.,* 623 F.3d 440, 443 (7th Cir. 2010). The Lanham Act does not authorize nationwide or international service of process; thus, the Court looks to the Illinois long-arm statute. *be2 LLC v. Ivanov,* 642 F.3d 555, 558 (7th Cir. 2011). The Illinois long-arm statute permits courts to exercise jurisdiction to the fullest extent permitted under the United States and Illinois Constitutions. 735 ILCS 5/2-209(c).

The Supreme Court has held that the exercise of personal jurisdiction over an out-of-state defendant comports with due process and the Constitution "if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman,* 571 U.S. 117, 126, 126 (2014)

- 11 -

(quotation omitted). The concept of "fair play and substantial justice" has led courts to recognize two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Id.* General jurisdiction exists where the defendant's activities within the state are "so continuous and systematic as to render them essentially at home." *Id.* at 127. For corporate defendants, general jurisdiction typically exists in the state of incorporation and the state where its principal place of business is located. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Specific jurisdiction is based on the defendant's suit-related activity in the state where the suit has been brought. *Daimler*, 571 U.S. at 126. In order for the Court to have specific jurisdiction over the defendant, the issues raised in the litigation must arise out of the defendant's contacts with the forum state. *Id.*

Workforce IP is a British limited liability company whose principal place of business is in London. (Compl. ¶ 3.) It is undisputed that this Court, sitting in Illinois, does not have general jurisdiction over Workforce IP. The Complaint instead alleges that this Court has specific jurisdiction over Workforce IP on three grounds. First, WFS alleges that Workforce IP has purposefully availed itself of jurisdiction in Illinois because Workforce IP directs the alleged trademark-violating activities

- 12 -

through its agents, WF.com and HCMA, within Illinois. Second, WFS alleges that Workforce IP is the alter ego of WF.com and/or HCMA and thus the Court may impute their Illinois contacts to exercise personal jurisdiction. Finally, WFS alleges that the Court may exercise jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2). Workforce IP's Motion to Dismiss disputes the factual basis for each of these allegations. In reply, WFS argues that, at minimum, it is entitled to jurisdictional discovery. The Court first reviews each of the alleged bases for jurisdiction and then reviews WFS's arguments for jurisdictional discovery.

WFS's first two bases for jurisdiction rely on factual allegations regarding Workforce IP's agency. WFS alleges that as the owner of the WORKFORCE and Design mark, Workforce IP directly or indirectly through its licensees and co-Defendants WF.com and HCMA "supervises and controls the nature and quality of the goods and services" offered by its "subsidiaries, affiliates, and licensees." (*Id.* ¶ 7.) Specifically, WFS alleges Workforce IP has purposefully directed the use of the at-issue WORKFORCE and Design mark in Illinois. WFS further alleges that Workforce IP's control over its affiliates is so pervasive that WF.com and HCMA are the "alter egos of [Workforce IP] and exist for no purpose other than conducting [Workforce IP's] business." (*Id.* ¶ 8.) WFS argues that

as a result of this degree of control the Court may impute WF.com and HCMA's undisputed contacts with Illinois to Workforce IP.

WF.com and HCMA are affiliates and not subsidiaries of Workforce IP. The relationship between these affiliated entities is defined by the affiliate licensing agreement between Workforce IP (as licensor) and WF.com and HCMA (as licensees). "[P]ersonal jurisdiction does not exist over a licensor by virtue of its status if it does not exercise control over the licensee's sales activities and has no dealings with the licensee beyond the receipt of royalty income." *Eco Pro Painting, LLC v. Sherwin-Williams Co.,* 807 F.Supp.2d 732, 737 (N.D. Ill. 2011) (quotation omitted). As a result, the Court looks to the degree of control the licensor exercises over the licensee, particularly the licensor's ability to regulate their licensee's operations or sales. *Id.* And only when the degree of control is so pervasive that corporate formalities are not observed may the Court also impute the jurisdictional contacts of the controlled entities to the foreign defendant in order to exercise jurisdiction. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 943 (7th Cir. 2000)

To evidence its lack of control over its affiliated licensees, Workforce IP offers two sworn declarations from its General Manager, Roderick Schneider (Schneider Decl.; Suppl. Schneider

Decl., Defs. Reply Br., Ex. 1, Dkt. No. 42-1.) According to Schneider, Workforce IP is a distinct entity that observes corporate formalities and "does not exercise day-to-day management control over [WF.com] or [HCMA]." (Schneider Decl. ¶ 10.) Defendants each "maintain separate books and records, financial statements and tax returns; and each "form their own contractual relationships with debtors and creditors." (*Id.*) Schneider also declared that Workforce IP does not "instruct, supervise, or direct the sales activities, advertising or marketing activities, or the purchasing activities of [WF.com] . . . or [HCMA.]" (Suppl. Schneider Decl. ¶ 2.) In its briefing, WFS has failed to rebut the Schneider Declarations with any evidence supporting the Complaint's conclusory allegations regarding Workforce IP's degree of control over WF.com or HCMA. The Court therefore concludes that WFS has not met its burden of proving that Workforce IP has availed itself of jurisdiction in Illinois by controlling the activities of its affiliates and licensees in Illinois or that WF.com or HCMA are the alter egos of Workforce IP.

In the alternative, WFS argues that the Court has personal jurisdiction over Workforce IP pursuant to Rule 4(k)(2). For claims arising under federal law, Rule 4(k)(2) allows the Court to exercise personal jurisdiction when: (1) the defendant is "not subject to jurisdiction in any state's courts of general

jurisdiction" and (2) "exercising jurisdiction is consistent with the United States Constitution and laws." FED. R. CIV. P. 4(k)(2). The claims in this case arise out of the Lanham Act, thus Rule 4(k)(2)'s prerequisite regarding federal law is satisfied. The parties similarly do not dispute that, because Workforce IP is headquartered and has its principal place of business in the United Kingdom, it is not subject to general jurisdiction anywhere in the United States. The Court thus focuses on the second prong of Rule 4(k)(2).

Exercising jurisdiction over Workforce IP is consistent with the Constitution and federal law when the defendant has "sufficient contacts with the United States as a whole to satisfy the due process requirements of the Fifth Amendment." *Flag Co. v. Maynard,* 376 F.Supp.2d 849, 854 (N.D. Ill. 2005). The Court applies the same minimum contacts test that applies in all federal question cases, but instead of limiting the contacts to Illinois looks at the United States as a whole. *Id.*

WFS identifies the following contacts between Workforce IP and the United States: (1) licensing the at-issue marks to its domestic affiliates WF.com and HCMA through the affiliate license agreement, and (2) filings before the USPTO. The affiliate license agreement does not establish Workforce IP's contacts with the United States as a whole. The Court does not have personal

- 16 -

jurisdiction over Workforce IP simply because it licenses the at-issue trademarks to WF.com and HCMA. *Eco Pro Painting,* 807 F.Supp. 2d at 737. Instead WFS must show that Workforce IP retains substantial control over the licensed marks. *Id.* As discussed above, WFS has failed to present evidence refuting Workforce IP's sworn statements that it does not retain any control over the at-issue trademarks. (Schneider Decl. ¶ 10; Suppl. Schneider Decl. ¶ 2.) Absent any indicium of control, the licensor-licensee relationship is also insufficient to establish Workforce IP's minimum contacts with the United States as a whole.

In contrast, a Defendant "who has sought and obtained a property interest from a U.S. agency has purposefully availed itself of the laws of the United States." *Touchcom, Inc. v. Bereskin & Parr,* 574 F.3d 1403, 1416 (Fed. Cir. 2009); *see also VMR Prod., LLC v. V2H ApS,* 2014 WL 12591932, at *4 (C.D. Cal. Aug. 4, 2014). As a result, by filing the '970 Application, Workforce IP availed itself of the laws of the United States. *Touchcom,* 574 F.3d at 1416. This is not, however, the end of the analysis. In order to establish specific jurisdiction, the complained of actions must arise out of Workforce IP's activities before the USPTO. *Id.* at 1416–17. WFS raises claims of trademark infringement, unfair business practices, and cybersquatting. None of these claims arise out of the '970 Application or the Petition

for Cancellation—Workforce IP's activities before the USPTO. Instead, the claims in this case arise out of Defendants' alleged infringement of WFS's trademarks. As a result, none of the trademark filing nor any of Workforce IP's other activities before the USPTO can serve as a basis for this Court to exercise jurisdiction pursuant to Rule 4(k)(2).

Having concluded that the current record does not support jurisdiction over Workforce IP, the Court turns to WFS's Motion for Jurisdictional Discovery. Jurisdictional discovery is appropriate where the factual record is ambiguous or unclear on the issue. *Medline Indus., Inc. v. Diversey, Inc.,* 2020 WL 5763637, at *4 (N.D. Ill. Sept. 28, 2020). But where "lack of personal jurisdiction is clear, jurisdictional discovery would serve no purpose and should not be permitted." *Id.* There is no ambiguity regarding Workforce IP's contacts with Illinois or the United States as a whole. Neither did WFS introduce evidence that might call into question the veracity of the Schneider Declarations. WFS has failed to set out a prima facie case for this Court to exercise jurisdiction over Workforce IP. The Court therefore finds that jurisdictional discovery is not appropriate.

For all these reasons, WFS's Motion for Jurisdictional Discovery is denied, Defendants' Rule 12(b)(2) Motion is granted, and Workforce IP is dismissed without prejudice. WFS may seek to

amend the First Amended Complaint and rename Workforce IP as a Defendant if, during the course of fact discovery, WFS identifies evidence that contradicts the Schneider Declarations or otherwise presents a basis for the Court to exercise jurisdiction over Workforce IP.

## B. Rule 12(b)(6) Motion to Dismiss

Defendants have moved to dismiss portions of Counts I-IV, as well as Counts V and VI in their entirety, all for failure to state a claim pursuant to Rule 12(b)(6). Counts I-IV allege federal and common law trademark infringement and unfair competition. Count V alleges Cybersquatting in violation the Anti-Cybersquatting Piracy Act, 15 U.S.C. § 1125(d). Count VI seeks an order requiring withdrawal of the '970 Application, pursuant to 15 U.S.C. § 1119. For the reasons that follow Defendants' Motion is denied as to Counts I-V and granted as to Count VI.

### 1. Claims Based on "Workforce" Alone

Counts I and II allege trademark infringement in violation of the Lanham Act (Count I) and the common law (Count II). Counts III and IV alleged unfair competition in violation of the Lanham Act (Count III) and common law (Count IV). Defendants argue that WFS has not alleged a protectable interest in the unregistered mark "WORKFORCE." Consequently, Defendants move to partially dismiss

- 19 -

Counts I–IV to the extent each Count relies on WFS's alleged protectable interest in the WORKFORCE mark.

Count I brings a trademark infringement claim based on 15 U.S.C. § 1114. Section 1114(1)(a) imposes civil liability for infringement on a registered mark. *Id.* § 1114(1)(a). The Complaint acknowledges that WFS has not registered its standalone WORKFORCE mark and specifically carves this mark out of Count I. (Compl. at 15 n.2). As a result, Defendants' Motion is denied as moot as to Count I.

WFS's common law trademark infringement claim and its common law and statutory unfair business practices claims each require proof that the WFS had a protectable ownership interest in the infringed upon mark. *Beacon Hill Staffing Grp., LLC v. Beacon Res.,* 2020 WL 7027651, at *2 (N.D. Ill. Nov. 30, 2020) (explaining that common law trademark infringement and statutory and common law unfair competition claims involve the same elements). Trademark law classifies marks using five categories of increasing distinctiveness: generic, descriptive, suggestive, arbitrary and fanciful. *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.,* 149 F.3d 722, 727 (7th Cir. 1998). Generic describes a mark that is "is commonly used and does not identify any particular source and, therefore, is not entitled to any trademark protection." *Id.* A descriptive mark "describes the ingredients, qualities, or

- 20 -

characteristics of an article of trade or a service." *Id.* (citations omitted). Descriptive marks are not typically afforded trademark protection unless the mark "acquires secondary meaning 'in the collective consciousness of the relevant community.'" *Id.* (quoting *Mil-Mar Shoe Co., Inc. v. Shonac Corp.,* 75 F.3d 1153, 1157 (7th Cir.1996)). Marks characterized as suggestive, arbitrary and fanciful are "automatically entitled to trademark protection because they are inherently distinctive." *Id.*

Defendants only argue that WFS cannot hold a protectable interest in the unregistered "WORKFORCE" mark because the "term is descriptive and WFS has not asserted any allegations establishing a secondary meaning for WORKFORCE alone." (Mot. to Dismiss Mem. at 13.) In response, WFS argues that it achieved a secondary meaning in its "WORKFORCE" mark because it is uniquely associated with its brand. Specifically, WFS alleges that it has continuously used its WORKFORCE mark for more than twenty years, resulting in a "distinctiveness in the minds of the purchasing public." (Compl. ¶¶ 13-15.)

WFS's allegations provide a plausible set of facts from which the Court can infer that the WORKFORCE mark attained a secondary meaning. *Sotelo v. Suburban 171, Inc.,* 2007 WL 2570355, at *4 (N.D. Ill. Aug. 29, 2007) (finding allegations that exclusive and extensive use rendered a mark uniquely associated with plaintiff's

brand sufficient to allege secondary meaning and survive a motion to dismiss). Defendants' demand for additional facts evidencing the secondary meaning of WORKFORCE alone demands too much at the pleading stage. Whether a mark is distinctive and has attained a secondary meaning are fact-based inquiries inappropriate for the motion to dismiss stage. *Joshi v. Joshi,* 2019 WL 3554388, at *5 (N.D. Ill. Aug. 1, 2019) (collecting cases). Because WFS has adequately pled that the WORKFORCE mark attained a secondary meaning, Defendants' Motion is denied as to Counts II–IV.

For all these reasons Defendants' partial 12(b)(6) Motion to Dismiss Counts I–IV is denied

### 2. Cybersquatting - 15 U.S.C. § 1125(d)

The Anti-Cybersquatting Piracy Act ("ACPA") prohibits bad faith registration, trafficking, or use of a domain name that is "identical or confusingly similar to" a mark that is "distinctive at the time of registration of the domain name." 15 U.S.C. § 1125(d). To state a claim under Section 1125(d) WFS must allege: (1) it had a distinctive or famous mark at the time the domain name was registered, (2) Defendants registered, trafficked in, or used a domain name that is identical or confusingly similar to WFS's mark, and (3) Defendants had a bad faith intent to profit from that mark. *Svanaco, Inc. v. Brand,* 417 F.Supp.3d 1042, 1055 (N.D. Ill. 2019). For the reasons set out below, WFS has adequately

pled a claim under the ACPA and Defendants' Motion to Dismiss is denied as to Count V.

The Parties do not dispute that the <workforce.com> domain was registered in 1994. It is also undisputed that WFS began operations in 1999. Defendants argue that because the domain was registered five years before WFS even began operations, WFS could not have held a mark that was distinctive or famous at the time of the registration. This, according to Defendants, forecloses WFS's ability to establish the first element of cybersquatting and dooms the claim in its entirety. In response, WFS argues that Defendants re-registered <workforce.com> after acquiring the domain from Mediatic. At the time of the re-registration, WFS's WORKFORCE SOFTWARE marks had become distinctive. This re-registration, according to WFS, brings Defendants' conduct with the scope of the ACPA's protections.

The question before the Court is whether the term "registration" extends to re-registration events after the creation and initial registration of a domain. The Seventh Circuit has yet to address this question. Three other Circuits, however, have done so and reached differing conclusions. The Third and Eleventh Circuits have concluded that "the language of the [ACPA] does not limit the word 'registration' to the narrow concept of 'creation registration.'" *Schmidheiny v. Weber,* 319 F.3d 581, 583

(3d Cir. 2003); *see also Jysk Bed'N Linen v. Dutta-Roy,* 810 F.3d 767, 777 (11th Cir. 2015) (adopting the Third Circuit's analysis). Under the approach adopted in *Schmidheiny* and *Jysk,* re-registrations occurring after a domain's creation registration are included within the ACPA's definition of "registration." *Jysk,* 810 F.3d at 777-78; *Schmidheiny,* 319 F.3d at 583. Such re-registrations could include the registration with a new registrar (the entity that manages domain registration and settings) or transfer to a new registrant (the domain owner) or the re-registration after a domain was allowed to expire. *Jysk,* 810 F.3d at 772; *Schmidheiny,* 319 F.3d at 583.

The Ninth Circuit reached the opposite conclusion. In *GoPets Ltd. v. Hise,* the Circuit Court found that actions taking place after the creation registration "could conceivably be described as 'registrations' within the meaning of § 1125(d)(1)." 657 F.3d 1024, 1031 (9th Cir. 2011). Even so, the Ninth Circuit went on to conclude that "Congress meant 'registration' to refer only to the initial registration" of a domain. *Id.* The *GoPets* court reasoned that the expansive definition adopted by the Third Circuit exposed new registrants to potential ACPA liability as new trademarks became distinctive. *Id.* 1031-32 This potential liability, the court explained, infringed on the right of domain owners to

transfer or sell all of the rights they own in their property and effectively made domains inalienable. *Id.*

The Court ultimately agrees with the approach taken by the Third and Eleventh Circuits. "The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd., LLC v. United States,* 541 U.S. 176, 183 (2004) (quotation omitted). The Court therefore begins by looking at the plain language of the ACPA and ends the inquiry there if the text is unambiguous. *Id.* Registration is undefined in the statute. The Miriam Webster Dictionary defines "registration" as "the act of registering." *Registration*, Miriam Webster (2021), *https://www.merriam-webster.com/dictionary/registration* (last visited Oct. 14, 2021). To register means "to make or secure official entry of in a register." *Register*, Miriam Webster (2021), *https://www.merriam-webster.com/dictionary/registering* (last visited Oct. 14, 2021). The plain reading of these definitions broadly refers to any time an entry is placed in a register and could apply equally to a domain's creation registration and any subsequent re-registration event. Because the ACPA does not modify the word "registration" with terms such as "initial" or "first" the Court will not read such limitations into the statute.

Accordingly, the unambiguous reading of the ACPA is that "registration" refers broadly to all registration events.

The policy arguments advanced by the Ninth Circuit do not change the Court's analysis. At the time of its drafting, Congress explained that the ACPA was "narrowly tailored . . . to extend only to cases where the plaintiff can demonstrate that the defendant registered, trafficked in, or used the offending domain name with bad-faith intent to profit from the goodwill of a mark belonging to someone else." S. REP. 106-140, 13. The purpose of the statute is to protect trademark holders from predatory registrants seeking to profit from distinctive marks. The Ninth Circuit's positions fails to fulfill this purpose in all circumstances.

It is widely accepted that the following fact pattern falls within the scope of Section 1125(d): A registrant is alleged to have purposefully created and registered a domain name that is similar to trademark held by someone else. The registrant's use of the domain is then alleged to infringe on the trademark holder's rights by drawing on their goodwill. The resulting harm is to the goodwill associated with that mark. A case involving bad faith conduct after a re-registration leads to the same consequences. For example, in this case Defendants are alleged to have acquired an existing domain name that is similar to marks held by WFS and

then transformed that domain's use from a magazine to a direct competitor with WFS. The alleged misconduct and harms that followed are identical to a creation registration action: misuse of a distinctive mark and harm to WFS's goodwill. In short, the way in which the registrant comes into possession of the domain does not change the potential harm. As a result, it is the bad faith conduct, not the definition of the word registration, which narrows the statute's focus.

In excluding re-registration claims, the Ninth Circuit did not acknowledge the harm that these cases could cause trademark holders. Instead, the Circuit Court focused on the potential for harm to the registrants. That harm, however, is overstated. The ACPA does not expose new registrants to potential liability simply because a mark may have become distinctive since the initial registration. Instead, there must be a showing of bad faith by the new registrant. For new registrants who continue to use a domain as it has always been used, there can be no serious allegation of bad faith. The ACPA's bad faith requirement thus protects the property rights of domain holders provided they continue to act in good faith. Where such conduct turns into bad faith and infringes on the rights of others, as with other statutes governing property rights, the ACPA steps in.

Having concluded that the definition of registration extends beyond the initial creation and registration of a domain name, the Court turns to the elements of a Section 1125(d) claim. First, it is undisputed that WFS's marks were distinctive at the time the <workforce.com> domain was transferred and re-registered with Defendants. Second, WFS has sufficiently alleged that Defendants' use of <workforce.com> as a platform for its own employee management software is confusingly similar to its own marks. Third and finally, WFS has adequately alleged that Defendants acted in bad faith. From 2012 to 2019, WF.com operated as Tanda, a WFS competitor. In 2019, Tanda acquired Mediatec and its assets including the <workforce.com> domain. Following the acquisition, Tanda rebranded as Workforce and transformed the <workforce.com> domain into a sales platform for its employee management software— which directly competes with WFS. These allegations set out a plausible set of facts from which the Court can draw the logical inference that Defendants acted in bad faith.

For all these reasons, Defendants' Rule 12(b)(6) Motion to Dismiss Count V is denied.

### 3. *Withdrawal of the '970 Application - 15 U.S.C. § 1119*

The Lanham Act allows "courts to determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the

- 28 -

register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. Count VI seeks an order requiring Defendants to withdraw their '970 Application, pursuant to Section 1119. For the reasons that follow, WFS has not adequately pled a Section 1119 claim and Defendants' Motion to Dismiss Count VI is granted.

The plain language of Section 1119 gives the Court the authority to adjudicate challenges to trademark registrations. To succeed on claim for trademark cancellation WFS must show that Defendants hold an invalid trademark registration. *Uncommon, LLC v. Spigen, Inc.,* 926 F.3d 409, 419 (7th Cir. 2019). To adjudicate whether a registration is invalid, it follows that a trademark cancellation action must involve an existing registered mark. Count VI, however, challenges the viability of the '970 Application and not the validity of Defendants' trademark registrations. The Lanham Act does not give the Court the authority to adjudicate challenges to applications pending before the USPTO.

Nothing in Section 1119 gives this Court the authority to order WFS to withdraw the '970 Application. Absent a statutory basis, Count VI's request for a withdrawal order is a request for injunctive relief. Such relief is appropriate for WFS's trademark infringement claims. Indeed, Count VI is duplicative of WFS's Fifth Prayer for Relief. Injunctive relief is not, however, properly

- 29 -

pursued as a separate cause of action. *CustomGuide v. CareerBuilder, LLC,* 813 F.Supp.2d 990, 1002 (N.D. Ill. 2011) ("[A]n injunction is an equitable remedy, not a separate cause of action.").

For all these reasons, WFS has not adequately pled a Section 1119 claim. Defendants' Motion to Dismiss Count VI is granted. Count VI is dismissed with prejudice.

### C. Rule 12(f) Motion to Strike

Under Rule 12(f) the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Rule 12(f)'s use of "may" denotes that the Court has discretion to exercise this authority. Indeed, motions to strike are generally disfavored, but will be granted where the result removes "unnecessary clutter" and expedites the litigation. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989). Defendants ask the Court to strike legal argument and case citations in Paragraphs 7, 9, 33, 41, 42, 47, and 65 of the Complaint. For the reasons that follow, Defendants' Motion to Strike is denied.

Rule 8 requires Defendants to respond to all allegations in the Complaint. FED. R. CIV. P. 8(b). Rule 8's requirements extend to allegations that include legal conclusions. *See, e.g., Pavlik v. FDIC,* 2010 WL 3937621, at *3 (N.D.Ill.2010) (holding that

- 30 -

failure to respond to an allegation because it is a legal conclusion violates Rule 8); *State Farm Mut. Auto. Ins. Co. v. Riley,* 199 F.R.D. 276, 278 (N.D.Ill.2001) (failing to respond to a legal conclusion violates the "express Rule 8(b) requirement that all allegations must be responded to"). That a defendant must answer legal conclusions does not, however, transform the Complaint into the appropriate forum for extensive legal arguments. Instead, the Court must determine whether the challenged legal arguments can "be answered by a short and plain admission, denial, or defense as contemplated by [Rule 8(b)]." *Walker v. Walker,* 2011 WL 3757314, at *2 (N.D. Ill. Aug. 25, 2011) (quotation omitted).

Defendants challenge the legal analysis in Paragraphs 9, 33, 41, 42, and 47. The disputed paragraphs do not present extensive or even complex legal analysis. Consequently, Defendants should be able to respond in accordance with Rule 8(b). *Id.* Defendants also challenge the inclusion of case citations in Paragraphs 7, 9, and 65. The identified citations are not extensive, and as a result the Court cannot conclude that Defendants will be unable to fashion a response in accordance with Rule 8. Ultimately, [the Court has] discretion in determining whether to grant a motion to strike." *Stainer v. Cracker Barrel Old Country Store, Inc.,* 2002 WL

31749176, at *1 (N.D. Ill. Dec. 5, 2002) The Court exercises this discretion, and the Motion to Strike is denied.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Jurisdictional Discovery is denied. Defendants' Rule 12(b)(2) Motion to Dismiss is granted and Workforce IP is dismissed. Defendants' Rule 12(b)(6) Motion to Dismiss is denied as to Counts I-V and granted as to Count VI. Count VI is dismissed with prejudice. Defendants' Rule 12(f) Motion to Strike is denied. Defendants' Motion to Extend Time is granted. Defendants shall file an answer to the First Amended Complaint within fourteen (14) days of the entry of this Order.

**IT IS SO ORDERED.**

_____
    Harry D. Leinenweber, Judge
    United States District Court

Dated: 10/26/2021