**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WORKFORCE SOFTWARE, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> WORKFORCE.COM, INC., a Delaware corporation f/k/a TANDA, INC., WORKFORCE IP LIMITED, a United Kingdom limited liability company, and HCMA, Inc. d/b/a HUMAN CAPITAL MEDIA, a Delaware corporation, <br><br> Defendants. | Case No. 1:20-cv-07365 <br><br> Hon. Harry D. Leinenweber <br><br> **FIRST AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND CYBERSQUATTING** <br><br> **(JURY DEMAND)** |

## <u>DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

Defendants Workforce.com, Inc. [1] ("Workforce.com") and HCMA, Inc. ("HCMA") (collectively "Defendants"), by their counsel, hereby file this Answer to the First Amended Complaint in this action filed by WorkForce Software, LLC ("WFS"). Pursuant to the Court's Order of October 26, 2021, Defendant Workforce Limited IP was dismissed from the case and Count VI of the Amended Complaint was dismissed with prejudice. *See* ECF No. 46. Except as specifically admitted herein, Defendants deny all allegations and averments of the First Amended Complaint and otherwise respond as follows:

## <u>THE PARTIES</u>

1.      Plaintiff Workforce is a Delaware limited liability company whose principal place of business is located at 38705 Seven Mile Road, Livonia, Michigan, 48152.

**<u>ANSWER:</u>** Admitted.

---

[1] Plaintiff's Amended Complaint continuously refers to Workforce.com, Inc. as "Tanda."

2.      Defendant Tanda is a Delaware corporation whose principal place of business is located at 150 N. Michigan Ave., Suite 550, Chicago, Illinois, 60601.  Tanda is a corporate affiliate of Tanda IP and HCMA.

**ANSWER:** Workforce.com admits that it is a Delaware corporation with its principal place of

business located at 150 N. Michigan Ave., Suite 550, in Chicago Illinois.  Workforce.com admits

that it is a corporate affiliate of Workforce IP Limited and HCMA.

3.      Defendant Tanda IP is United Kingdom limited liability company whose principal place of business is located at The Frames, Office 208, 2nd Floor, 1 Phipp Street, London, EC2A4PS, United Kingdom.  Tanda IP is a corporate affiliate of Tanda and HCMA.

**ANSWER:**  Workforce IP Limited was dismissed from this action by the Court's Order of October

26, 2021.  *See* ECF No. 46.  Accordingly, no response to Paragraph 3 is required.

4.      Defendant HCMA is a Delaware corporation whose principal place of business is located at 150 N. Michigan Avenue, Suite 550, Chicago, IL, 60601.  HCMA is a corporate affiliate of Tanda and Tanda IP.

**ANSWER:**  HCMA admits that it is a Delaware corporation with its principal place of business

located at 150 N. Michigan Ave., Suite 550, in Chicago Illinois.  HCMA admits that it is a

corporate affiliate of Workforce.com and Workforce IP Limited.

## JURISDICTION

5.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this is a trademark infringement and anti-cybersquatting case arising under the laws of the United States, specifically arising under the Trademark Act of 1946, Pub. L. 79-489, 60 Stat. 427, codified at 15 U.S.C. § 1051 *et seq.* (hereinafter, the "Lanham Act"), and arising under the Anti-cybersquatting Consumer Protection Act, Pub. Law 106-113, codified at 15 U.S.C. § 1125(d) (hereinafter, the "ACPA").

**ANSWER:**  Paragraph 5 constitutes a legal conclusion that is not subject to denial or admission.

To the extent a response is required, Defendants admit that the claims alleged in the First Amended

Complaint purport to arise under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, et

seq. ("Lanham Act") and 15 U.S.C. § 1125(d), if such claims were properly alleged.  Defendants

also admit that this Court has subject matter jurisdiction over the claims alleged in the First

Amended Complaint pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, if such claims were properly alleged.

6.      This Court has personal jurisdiction over Tanda because it is physically present in this judicial district and because this Court's exercise of personal jurisdiction over Tanda is constitutionally reasonable.

**ANSWER:** Paragraph 6 constitutes a legal conclusion that is not subject to denial or admission. To the extent a response is required, Defendants admit that Workforce.com is subject to personal jurisdiction in this district if the claims in the First Amended Complaint were properly alleged.

7.      This Court has specific personal jurisdiction over Tanda IP. The United States Supreme Court has held that, "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13, 134 S. Ct. 746, 759, n.13, 187 L. Ed. 2d 624 (2014). As the owner of Defendants' WORKFORCE and Design mark, Tanda IP, directly or indirectly through Tanda and/or HCMA, supervises and controls the nature and quality of the goods and services offered by Tanda IP's subsidiaries, affiliates, and licensees in this judicial district, including those offered by Tanda and HCMA in this judicial district under Defendants' WORKFORCE and Design mark. Accordingly, Tanda IP has purposefully directed Defendants' use of Defendants' WORKFORCE and Design mark in commerce in this judicial district and is subject to the Court's exercise of specific personal jurisdiction over it.

**ANSWER:** Workforce IP Limited was dismissed from this action by the Court's Order of October 26, 2021. *See* ECF No. 46. Accordingly, no response to Paragraph 7 is required. Otherwise, denied.

8.      In addition, or alternatively, this Court has specific personal jurisdiction over Tanda IP because, upon information and belief, Tanda IP exercises such a high degree of control over Tanda and/or HCMA that they are the alter egos of Tanda IP and exist for no purpose other than conducting Tanda IP's business such that their respective forum-based activities, including without limitation, their offering of goods and/or services under the WORKFORCE & Design mark in commerce in this judicial district, should be attributed to Tanda IP.

**ANSWER:** Workforce IP Limited was dismissed from this action by the Court's Order of October 26, 2021. *See* ECF No. 46. Accordingly, no response to Paragraph 8 is required. Otherwise, denied.

9.      In addition, or alternatively, this Court has personal jurisdiction over Tanda IP pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure based upon Tanda IP's contacts

with the United States as a whole. Tanda IP has purposefully availed itself of the benefits and privileges of the trademark laws of the United States as well as the benefits and privileges of having its goods and services sold through its licensed subsidiaries and affiliates in the United States. As set forth below, on October 12, 2020, Tanda IP filed a counterclaim against Plaintiff in a trademark opposition proceeding No. 91264550 pending before the United States Trademark Trial and Appeal Board (the "TTAB") seeking cancellation of Plaintiff's U.S. Trademark Registration No. 4,608,651 for its WORKFORCE SOFTWARE mark (hereinafter, the "Cancellation Counterclaim"). In addition, on October 15, 2019, Tanda IP filed Application Serial No. 88/654,970 with the United States Patent and Trademark Office (the "USPTO") seeking a United States trademark registration for its WORKFORCE and Design mark. Moreover, on March 5, 2020, Tanda IP filed a Petition for Cancellation with the TTAB seeking cancellation of Plaintiff's U.S. Trademark Registration No. 4,608,651 for its WORKFORCE SOFTWARE mark. *See, e.g.*, *VMR Prods., LLC v. V2H ApS*, No. 13-01179, 2014 WL 12591932 (C.D. Cal. Aug. 4, 2014) ("Courts have ruled that an application with the USPTO filed by a non-U.S. defendant constitutes purposeful availment for purposes of establishing jurisdiction under Rule 4(k)(2)."); *CytoSport, Inc. v. Cytogenix Sports Labs.*, No. 2:10- 700-WBS-KJM, 2010 WL 5418883, at *5 (E.D. Cal. Dec. 23, 2010) ("By submitting trademark applications for the "Cyto" products to the United States Patent and Trademark Office . . . defendant purposefully availed itself of the privilege of doing business in the United States."); *Monster Cable Prods., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010 (N.D. Cal. 2009) ("Here, [defendant] EFI's June 2003 application to the PTO . . . constitutes a substantial contact. EFI would be able to sue for protection against allegedly infringing marks based on its trademark registration. The privilege of trademark registration invokes the benefits and protections of trademark law. It is reasonable and does not offend 'traditional notions of fair play and substantial justice,' to require EFI to submit to the burden of litigation.") (citation omitted). Considering Tanda IP's purposeful contacts with the United States and its purposeful availment of the benefits and privileges of United States trademark law, Tanda IP can hardly complain about being sued in the United States in the very same judicial district where its corporate affiliates are located and conduct business.

**ANSWER:** Workforce IP Limited was dismissed from this action by the Court's Order of October 26, 2021. *See* ECF No. 46. Accordingly, no response to Paragraph 9 is required. Otherwise, denied.

10. In light of the foregoing allegations, this Court's exercise of personal jurisdiction over Tanda IP is constitutionally reasonable.

**ANSWER:** Workforce IP Limited was dismissed from this action by the Court's Order of October 26, 2021. *See* ECF No. 46. Accordingly, no response to Paragraph 10 is required. Otherwise, denied.

11. This Court has personal jurisdiction over HCMA because it is physically present in this judicial district and because this Court's exercise of personal jurisdiction over HCMA is constitutionally reasonable.

**ANSWER:** Paragraph 11 constitutes a legal conclusion that is not subject to denial or admission. However, to the extent a response is required, Defendants admit that HCMA is subject to personal jurisdiction in this district if the claims in the First Amended Complaint were properly alleged.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(b)(3).

**ANSWER:** Paragraph 12 constitutes a legal conclusion that is not subject to denial or admission. However, to the extent a response is required, Defendants admit that venue in this district is proper if the claims in the First Amended Complaint were properly alleged.

## ALLEGATIONS COMMON TO ALL COUNTS

### *Plaintiff and its Family of "Workforce" Trademarks*

13.     Since at least 1999, Plaintiff has been, and still is, engaged in the development, marketing, and sale of computer software for timekeeping and workforce management, namely, for tracking, recording, analyzing and managing the time and activities of employees, contractors, contingent workers and other staff and consulting services related to implementation of computer software and programs for others under the marks WORKFORCE™, WORKFORCE SOFTWARE®, and related marks, all containing the words "WORKFORCE" alone or the words "WORKFORCE SOFTWARE." Plaintiff's long and continuous advertising, promotion, and use of its "WORKFORCE" and "WORKFORCE SOFTWARE" marks in commerce has resulted in the marks acquiring distinctiveness in the minds of the purchasing public, who have come to identify Plaintiff as the source of Plaintiff's software for timekeeping and workforce management offered for sale under the "WORKFORCE" and "WORKFORCE SOFTWARE" marks.

**ANSWER:** Defendants deny that any of Plaintiff's alleged trademarks, including the purported registration and common law marks, are valid or distinctive. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 13 and, therefore, deny them.

14.     Plaintiff has established a family of trademarks based on its longstanding use of the term "WORKFORCE." The term is a recognizable common characteristic that is present in Plaintiff's WORKFORCE trademarks. And, as set forth above, it has acquired distinctiveness due to Plaintiff's longstanding and well-established use of the term in commerce combined with Plaintiff's longstanding and well-established advertising and promotion of the term, both of which have led the purchasing public to recognize Plaintiff as the source of Plaintiff's software for timekeeping and workforce management.

**ANSWER:** Defendants deny that any of Plaintiff's alleged trademarks, including the purported registration and common law marks, are valid or distinctive. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 14 and, therefore, deny them.

15.    Plaintiff's family of WORKFORCE trademarks includes, for example, the following marks: (1) WORKFORCE; (2) WORKFORCE SOFTWARE®; (3) WORKFORCE SOFTWARE and Design®; (4) WFS A WORKFORCE SOFTWARE COMPANY and Design®; and (5) WFS A WORKFORCE SOFTWARE COMPANY and Design® (hereinafter, collectively the "WORKFORCE™ SOFTWARE Marks").

**ANSWER:** Defendants admit that WFS is listed on the U.S. Patent and Trademark Office ("USPTO") database as the record owner of alleged U.S. trademarks WORKFORCE SOFTWARE, WORKFORCE SOFTWARE and Design Mark, and WFS A WORKFORCE SOFTWARE COMPANY and Design Mark. Defendants deny that any of Plaintiff's alleged trademarks, including the purported registration and common law marks, are valid or distinctive. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 15 and, therefore, deny them.

16.    Plaintiff has used and continues to use its WORKFORCE™ SOFTWARE Marks extensively in connection with computer software for timekeeping and workforce management, namely, for tracking, recording, analyzing and managing the time and activities of employees, contractors, contingent workers and other staff and consulting services related to implementation of computer software and programs for others.

**ANSWER:** Defendants deny that any of Plaintiff's alleged trademarks, including the purported registration and common law marks, are valid or distinctive. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 16 and, therefore, deny them.

17.    There is a huge demand for computer software for timekeeping and workforce management, namely, for tracking, recording, analyzing and managing the time and activities of employees, contractors, contingent workers and other staff and consulting services related to implementation of computer software and programs for others bearing Plaintiff's WORKFORCE™ SOFTWARE Marks.

**ANSWER:** Defendants deny that any of Plaintiff's alleged trademarks, including the purported

registration and common law marks, are valid or distinctive. Defendants lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 17

and, therefore, deny them.

18.     Plaintiff offers its goods and services for computer software for timekeeping and
workforce management, namely, for tracking, recording, analyzing and managing the time and
activities of employees, contractors, contingent workers and other staff and consulting services
related to implementation of computer software and programs for others on its website
www.workforcesoftware.com, where it appears, as follows:



**ANSWER:** Defendants admit that the website www.workforcesoftware.com displays the logo

shown in Paragraph 18. Defendants lack knowledge or information sufficient to form a belief as

to the truth of the remaining allegations of Paragraph 18 and, therefore, deny them.

19.     Since at least 1999, Plaintiff has continuously used and promoted its
WORKFORCE™ SOFTWARE Marks.  Plaintiff's family of WORKFORCE™ SOFTWARE
Marks is the subject of substantial and continuous marketing and promotion by Plaintiff in
connection with its computer software for timekeeping and workforce management.  Plaintiff has
and continues to widely market and promote its family of WORKFORCE™ SOFTWARE Marks
in the industry and to consumers by, for example, displaying the WORKFORCE™ SOFTWARE
Marks on computer software, on product samplings, on promotional and point of sale materials, in
magazines and other industry publications, on the workforcesoftware.com website, and other
Internet websites and social media sites, and at trade shows.  In addition, Plaintiff promotes the
WORKFORCE™ SOFTWARE Marks through, for example, its www.workforcesoftware.com
website, which is published nationwide and internationally.

**ANSWER:** Defendants deny that any of Plaintiff's alleged trademarks, including the purported

registration and common law marks, are valid or distinctive. Defendants lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 19

and, therefore, deny them.

20.    By virtue of Plaintiff's continuous and substantial use of its WORKFORCE™ SOFTWARE Marks in commerce, the marks have become distinctive, and Plaintiff has developed strong common law rights in its WORKFORCE™ SOFTWARE Marks.

**ANSWER:**  Paragraph 20 constitutes a legal conclusion that is not subject to denial or admission. However, to the extent a response is required, Defendants deny that any of Plaintiff's alleged trademarks, including the purported registration and common law marks, are valid or distinctive. Defendants deny the remaining allegations in Paragraph 20.

21.    In addition to its common law trademark rights, Plaintiff also owns four U.S. Trademark registrations.

**ANSWER:**  Paragraph 21 constitutes a legal conclusion that is not subject to denial or admission. However, to the extent a response is required, Defendants admit that WFS is listed on the U.S. Patent and Trademark Office ("USPTO") database as the record owner of four alleged U.S. trademarks: WORKFORCE SOFTWARE, WORKFORCE SOFTWARE and Design Mark, WFS A WORKFORCE SOFTWARE COMPANY and Design Mark, and A WORKFORCE SOFTWARE COMPANY WFS and Design Mark. Defendants deny that any of Plaintiff's alleged trademarks, including the purported registration and common law marks, are valid or distinctive. Defendants deny the remaining allegations in Paragraph 21.

22.    Plaintiff owns U.S. Trademark Registration No. 4,608,651 for the mark WORKFORCE SOFTWARE® in International Class 42 for use in connection with, "consulting services related to implementation of computer software and programs for others," which registration issued September 23, 2014 and is based on an application filed in the United States Patent and Trademark Office (the "USPTO") on December 3, 2013 (hereinafter, the " '651 Registration"). A true and correct copy of the '651 Registration is attached hereto as Exhibit A.

**ANSWER:** Defendants admit that Paragraph 22 refers the U.S. Trademark Registration No. 4,608,651, which speaks for itself, and Defendants deny any characterizations thereof. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 22 and, therefore, deny them.

23. Plaintiff also owns U.S. Trademark Registration No. 4,681,022 for the WORKFORCE SOFTWARE and Design® mark in International Class 42 for use in connection with "consulting services related to implementation of computer software and programs for others," which registration issued February 3, 2015 and is based on an application filed in the USPTO on May 2, 2014 (hereinafter, the " '022 Registration"). A true and accurate copy of the '022 Registration is attached hereto as Exhibit B.

**ANSWER:** Defendants admit that Paragraph 23 refers to the U.S. Trademark Registration No. 4,681,022, which speaks for itself, and Defendants deny any characterizations thereof. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 23 and, therefore, deny them.

24. Plaintiff also owns U.S. Trademark Registration No. 4,830,531 for the WFS A WORKFORCE SOFTWARE COMPANY and Design® mark in International Class 9 for use in connection with "computer software for timekeeping and workforce management, namely, for tracking, recording, analyzing and managing the time and activities of employees, contractors, contingent workers and other staff;" and in International Class 42 for use in connection with "consulting services related to implementation of computer software and programs for others," which registration issued October 13, 2015, and is based on an application filed in the USPTO on February 6, 2015 (hereinafter, the " '531 Registration"). A true and accurate copy of the '531 Registration is attached hereto as Exhibit C.

**ANSWER:** Defendants admit that Paragraph 24 refers to the U.S. Trademark Registration No. 4,830,531, which speaks for itself, and Defendants deny any characterization thereof. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 24 and, therefore, deny them.

25. Plaintiff also owns U.S. Trademark Registration No. 5,249,285 for WFS A WORKFORCE SOFTWARE COMPANY and Design® mark in International Class 9 for use in connection with, "computer software for timekeeping and workforce management, namely, for tracking, recording, analyzing and managing the time and activities of employees, contractors, contingent workers and other staff;" in International Class 35 for use in connection with "business planning; business strategic planning services; business management consultancy as well as development of processes for the implementation of strategy plans and management projects; structuring, optimizing, and change management consulting related to timekeeping and scheduling; business organization and management consultancy including personnel management;" and in International Class 42 for use in connection with, "consulting services related to implementation of computer software and programs for others," which registration issued July 25, 2017 and is based on an application filed in the USPTO on September 30, 2016 (hereinafter, the " '285 Registration"). A true and accurate copy of the '285 Registration is attached hereto as Exhibit D.

**ANSWER:** Defendants admit that Paragraph 25 refers to the U.S. Trademark Registration No. 5,249,285, which speaks for itself, and Defendants deny any characterization thereof. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 25 and, therefore, deny them.

26. Plaintiff's U.S. Trademark Registration Nos. 4,608,651, 4,681,022, 4,830,531, and 5,249,285 are valid, subsisting, unrevoked, and uncancelled. They constitute *prima facie* evidence of the validity of the registered marks and of the registrations thereof, and of Plaintiff's ownership of the marks shown therein. Plaintiff's trademark registrations also constitute notice to Defendants of Plaintiff's claim of ownership of the marks shown therein, as provided for in Sections 7(b), 22, and 33(a) of the Lanham Act. *See* 15 U.S.C. §§ 1057(b), 1072, and 1115(a).

**ANSWER:** Defendants admit that Paragraph 26 refers to U.S. Trademark Registration Nos. 5,249,285, 4,681,022, 4,830,531, and 5,249,285, which speak for themselves, and Defendants deny any characterizations thereof. Defendants admit that WFS is listed on the U.S. Patent and Trademark Office ("USPTO") database as the record owner of alleged U.S. Trademark Registration Nos. 4,608,651, 4,681,022, 4,830,531, and 5,249,285. Defendants deny that any of the alleged trademarks, including the purported registration and common law marks, are valid or distinctive. Defendants deny the remaining allegations in Paragraph 26.

27. Plaintiff has continuously used and promoted the WORKFORCE™ SOFTWARE Marks, including WORKFORCE SOFTWARE®, WORKFORCE SOFTWARE and Design®, and its WFS A WORKFORCE SOFTWARE COMPANY and Design® marks shown in Registration Nos. 4,608,651, 4,681,022, 4,830,531, and 5,249,285 in interstate commerce in connection with its goods and services, including the goods and services identified in such Registrations.

**ANSWER:** Defendants deny that any of Plaintiff's alleged trademarks, including the purported registration and common law marks, are valid or distinctive. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 27 and, therefore, deny them.

28. By virtue of Plaintiff's continuous and substantial use in commerce, the WORKFORCE™ SOFTWARE Marks distinguish Plaintiff's goods and services from the goods and services of others. As a result, Plaintiff has built up, at great expense and effort, valuable goodwill in the WORKFORCE™ SOFTWARE Marks, and owns the exclusive right to use the

WORKFORCE™ SOFTWARE Marks in commerce in connection with the registered and related goods and services throughout the United States.

**ANSWER:** Paragraph 28 constitutes a legal conclusion that is not subject to denial or admission. However, to the extent a response is required, Defendants deny that any of Plaintiff's alleged trademarks, including the purported registration and common law marks, are valid or distinctive. Defendants deny that WFS has the exclusive right to the purported registration and common law marks. Defendants deny the remaining allegations in Paragraph 28.

*Defendants' Predecessor-in-Interest Used "Workforce" for a Magazine*

29.    Upon information and belief, beginning in the 1920s, Defendants' predecessor-in-interest, Mediatec Publishing Ltd. ("Mediatec"), who conducted business as "Human Capital Media," published and distributed the Journal of Personnel Research.  Mediatec subsequently decided to change the name of its journal from the Journal of Personnel Research to "Workforce" or "Workforce Magazine."

**ANSWER:** Admitted.

30.    On March 27, 2018, Mediatec applied for and later obtained U.S. Trademark Registration No. 5,743,073 for the WORKFORCE mark in International Class 16 for use in connection with, "[p]rinted publications, namely, magazines, journals, and newsletters directed to the field of employment and human resources, but not featuring content concerning testing or evaluation;" and in International Class 41 for use in connection with, "[p]roviding on-line non-downloadable publications, namely, magazines, journals, and newsletters directed to the field of employment and human resources, but not featuring content concerning testing or evaluation." (hereinafter, the " '073 Registration").  Mediatec's trademark application states that it first used WORKFORCE in commerce in connection with these goods and services on September 30, 2013.

**ANSWER:** Defendants admit that Paragraph 30 refers to the U.S. Trademark Registration No. 5,743,073 and Mediatec's trademark application for that Registration, which speak for themselves and Defendants deny any characterizations thereof.

31.    Upon information and belief, Mediatec registered the <workforce.com> domain name on or about February 22, 1994, and used the domain name to advertise, promote, and distribute its Workforce Magazine.

**ANSWER:** Admitted.

*Defendants Acquire Human Capital Media then Change its Name to Workforce*

32.     Defendants Tanda, Tanda IP, and HCMA, themselves or through their related companies, are in the business of offering, promoting, marketing, and advertising, printed and online publications in the field of employment and human resources, as well as employee time-and-attendance (*i.e.*, TANDA) software for employee management, timeclocking, and other related goods and services.

**ANSWER:** Admitted as to Workforce.com and HCMA. Workforce IP Limited was dismissed from this by the Court's Order of October 26, 2021. *See* ECF No. 46. Accordingly, no response to Paragraph 32 regarding Workforce IP Limited is required.

33.     On April 30, 2019, Defendants acquired certain trademarks and other assets of Mediatec, including, among others, U.S. Trademark Registration No. 4,219,648 for the HUMAN CAPITAL MEDIA mark, the '073 Registration for the WORKFORCE mark for use in connection with *publications*, and the <workforce.com> domain name. Mediatec's assignment of the WORKFORCE trademark to HCMA was recorded with the USPTO on or about April 8, 2020 as Assignment No. 900544022 at Reel 006910, Frame 0568-0569. However, because Mediatec had never used the WORKFORCE mark in connection with human relations management software, Mediatec never obtained common law or statutory rights to use the WORKFORCE mark in connection with such goods and/or services. Consequently, Mediatec's assignment of its WORKFORCE mark to HCMA carried with it no right to use the WORKFORCE mark in connection with human relations management software.

**ANSWER:** Defendants admit that, on April 30, 2019, HCMA acquired U.S. Trademark Registration No. 4,219,648, and U.S. Trademark Registration No. 5,743,073, and the workforce.com domain name; Defendants also admit that the assignment of the WORKFORCE trademark was recorded with the USPTO on or about April 8, 2020 as Assignment No. 900544022 at Reel 006910, Frame 0568-0569, which speaks for itself and Defendants deny any characterizations thereof. The remaining allegations contained in Paragraph 33 constitute legal conclusions that are not subject to denial or admission. However, to the extent a response is required, Defendants deny them.

34.     Nevertheless, upon acquiring Mediatec's assets, including the HUMAN CAPITAL MEDIA mark, the '073 Registration for the WORKFORCE mark for use in connection with *publications* (*i.e.*, Workforce Magazine), and the <workforce.com> domain name used to advertise, promote, and distribute the magazine, Defendants decided to change the name of the company from HUMAN CAPITAL MEDIA to "Workforce."

**ANSWER:** Defendants admit that HCMA acquired the HUMAN CAPITAL MEDIA mark, the workforce.com domain name, and the U.S. Trademark Registration No. 5,743,073, which speak for themselves and Defendants deny any characterizations thereof. Defendant deny that they decided to change the name of the company from HUMAN CAPITAL MEDIA to "Workforce." Except as specifically admitted, Defendants deny the remaining allegations in Paragraph 34.

35. Indeed, the "FAQ" section of <workforce.com> states the following:

Why is Tanda changing to Workforce.com?

As we have continued to evolve we have identified more services beyond our current offerings that we wish to develop. In order to accommodate these new products and services, we feel it necessary to move away from a brand so closely associated with time & attendance. Rebranding to workforce.com will enable us to offer our current and future services under a unified brand; leveraging the best software and the best workforce management research/editorial.

Workforce.com and the Workforce Magazine has been around for over 97 years, leading the way in scientific, workforce management research and the application of such to advance the happiness, welfare and efficiency of those who work. At Tanda, we too strive to make workforces successful which made the decision to bring everything under the workforce.com banner an easy one.

*See* https://www.workforce.com/faqs (last visited Dec. 10, 2020).

**ANSWER:** Defendants admit that Paragraph 35 quotes from the website: https://www.workforce.com/faqs as it appeared on December 10, 2020, which speaks for itself, and Defendants deny any characterization thereof.

36. On October 15, 2019, Tanda IP filed U.S. Trademark Application Serial No. 88/654,970 with the United States Patent and Trademark Office (the "USPTO") seeking registration of its WORKFORCE and Design mark in International Class 9 for use in connection with "downloadable software for employee management and timeclocking," and in International Class 42 for use in connection with, "providing online non-downloadable software for employee management and timeclocking; Software as a Service (SAAS) for employee management and timeclocking." (hereinafter, the "Tanda Application").

**ANSWER:** Workforce IP Limited was dismissed from this action by the Court's Order of October 26, 2021. *See* ECF No. 46. Accordingly, no response to Paragraph 36 regarding Workforce IP Limited is required. Otherwise, Defendants admit that Paragraph 36 refers to U.S. Trademark Application Serial No. 88/654,970, which speaks for itself and Defendants deny any characterization thereof.

*Defendants' Infringement of the Workforce™ Software Marks*

37. Having acquired Mediatec (*i.e.*, Human Capital Media), in April, 2019, Defendants have since begun using the WORKFORCE & Design mark (depicted below) in commerce in connection with their *software* for employee management and timeclocking:



**ANSWER:** Defendants admit that, since May 2019 and continuing as of the date of this Answer, Defendants have been using the trademark UWORKFORCE & Design mark (depicted in Paragraph 37) in connection with their market-leading technology platform that includes software for employee management and timeclocking. Defendants deny the remaining allegations in Paragraph 37.

38. Defendants' [*sic*] also use a version of the WORKFORCE and Design mark (depicted below) to offer competing human resources management *software* in commerce both in the domain name of Defendants' <workforce.com> website and on the website itself:



**ANSWER:** Defendants admit that, as of the date of this Answer, the Design mark shown in Paragraph 38 is displayed on the workforce.com website and that Defendants offer software for employee management and timeclocking along with other goods and services. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 38 and, therefore, deny them.

39.     Instead of offering only the Workforce Magazine publication, Defendants' revamped <workforce.com> website now offers "Advanced scheduling, time & attendance, employee engagement and automated labor compliance" *software*.  The website describes Defendants' software products as including, "Scheduling Software," "Time and Attendance Software," "Employee App," "Workforce Analytics," and "Labor and Compliance." Under the "Product" tab, the website lists the following specific software applications: "Time Clock App," "Auto Scheduling," "Employee Onboarding," "Workforce Chat," "Time-Off," "Live Wage Tracker," "Shift Swapping," "Shift Feedback," "Shift Ratings," "GPS Clock-ins," and "Payroll Integration." *See* https://www.workfore.com (last visited Dec. 10, 2020).

**ANSWER:** Defendants admit that Paragraph 39 refers to information contained on the

https://www.workforce.com website as it existed on December 10, 2020, which speaks for itself

and Defendants deny any characterizations thereof.  Defendants admit that the workforce.com

website, as of the date of this Answer, continues to offer the following under a "Product" heading:

"Employee Scheduling," "Time & Attendance," "Payroll Integration," Employee App,"

"Paperless Onboarding," "Communications," and "Autoscheduling," but denies there is currently

a separate "Product" tab or a specific listing of "software applications."

40.     Defendants are using their WORKFORCE and Design mark in commerce and on <workforce.com> in connection with the same or similar goods in International Class 9 and in connection with the same or similar services in International Class 42 as those offered by Plaintiff. Defendants are doing so without having prior common law or statutory rights to use their WORKFORCE and Design mark in connection with *software*, without a license from Plaintiff, and without Plaintiff's authorization or consent.

**ANSWER:** Paragraph 40 constitutes legal conclusions that are not subject to denial or admission.

However, to the extent a response is required, Defendants deny the allegations in Paragraph 40

and deny that any of Plaintiff's alleged trademarks, including the purported registration and

common law marks, are valid or distinctive, or that any license, authorization, or consent from

Plaintiff is or ever was required.

41.     Indeed, Plaintiff's acquisition of common law rights in its family of WORKFORCE™ SOFTWARE Marks well predates the October 15, 2019 filing date of the Defendants' application to register their WORKFORCE and Design mark.  As a result, Plaintiff's common law rights in Plaintiff's WORKFORCE™ SOFTWARE Marks for use in connection with computer software for timekeeping and workforce management and related goods and services

have priority over Defendants' unauthorized use of the same or confusingly similar marks for the same or related goods and services.

**ANSWER:** Paragraph 41 constitutes legal conclusions that are not subject to denial or admission.

However, to the extent a response is required, Defendants deny the allegations in Paragraph 41.

42.     The filing dates of Plaintiff's respective trademark applications, each of which matured into the '651 Registration, the '022 Registration, the '531 Registration, and the '285 Registration all preceded the October 15, 2019 filing date of the Defendants' application to register their WORKFORCE and Design mark. As a result, Plaintiff's statutory rights in Plaintiff's WORKFORCE™ SOFTWARE Marks for use in connection with computer software for timekeeping and workforce management and related goods and services have priority over Defendants' unauthorized use of the same or confusingly similar marks for the same or related goods and services.

**ANSWER:** Paragraph 42 constitutes legal conclusions that are not subject to denial or admission.

However, to the extent a response is required, Defendants state that the '651 Registration, the '022

Registration, the '531 Registration, and the '285 Registration all speak for themselves, and

Defendant deny any characterizations thereof, and admit that those registrations preceded

Defendants' application to register their WORKFORCE and Design mark. Defendants deny the

remaining allegations in Paragraph 42.

43.     Defendants' WORKFORCE and Design marks so resemble Plaintiff's WORKFORCE™ SOFTWARE Marks, as to be likely, when used on or in connection with the same or related goods and/or services to cause confusion, or to cause mistake, or to deceive consumers as to the source or origin of Plaintiff's goods and/or services.

| Plaintiff's Marks | Defendants' Marks |
|---|---|
|  |  |
|  |  |

**ANSWER:** Denied.

44.     Defendants' unauthorized and continuing use of its confusingly similar WORKFORCE and Design marks is causing Plaintiff to suffer monetary loss and irreparable injury to its business, reputation, and goodwill.  Absent a preliminary and permanent injunction, Plaintiff will continue to suffer irreparable injury to its business, reputation, and goodwill in its WORKFORCE™ SOFTWARE Marks.

**ANSWER:**  Denied.

*History of the Parties' Dispute*

45.     On March 5, 2020, Tanda *and* Tanda IP filed a Petition for Cancellation with the USPTO seeking cancellation of Plaintiff's U.S. Trademark Registration No. 4,608,651 for its WORKFORCE SOFTWARE mark (hereinafter, the "Cancellation Proceeding").   In the Cancellation Proceeding, Tanda *and* Tanda IP allege, *inter alia*, that they are "in the business of offering . . . a market-leading technology platform that includes software for employee management and timeclocking, and other related goods and services." (Pet. for Cancellation ¶¶ 3-6.) They allege use of their WORKFORCE and Design mark[2] in commerce in connection with their "technology platform that includes software for employee management and timeclocking." (*Id*.) They claim that Plaintiff's '651 Registration for its WORKFORCE SOFTWARE mark must be cancelled because the mark is generic.  (*Id*. ¶¶ 16-.24.)

**ANSWER:**  Defendants admit that, on March 5, 2020, Workforce.com and Workforce IP Limited

filed a Petition for Cancellation with the USPTO seeking cancellation of Plaintiff's U.S.

Trademark Registration No. 4,608,651, which speaks for itself.   Defendants deny any

characterizations thereof, including those contained in the footnote to Paragraph 45.

46.     On September 2, 2020, Plaintiff filed a Notice of Opposition with the United States Trademark Trial and Appeal Board seeking to prevent the Tanda Application from maturing into a federal trademark registration.  The proceeding was assigned No. 91264550 (hereinafter, the "Opposition Proceeding").  In the Opposition Proceeding, Plaintiff asserts that its family of WORKFORCE™ SOFTWARE Marks for use in connection with: "computer software for timekeeping and workforce management," and alleges it will be harmed by Tanda IP's registration of its confusingly similar WORKFORCE and Design mark for the same or related services.

**ANSWER:**  Defendants admit that, on September 2, 2020, Notice of Opposition with the United

States Trademark Trial and Appeal Board, which speaks for itself and Defendants deny any

characterizations thereof.   Defendants admit that the Opposition Proceeding was assigned No.

---

[2] 1 Tanda claims that it is using the mark "UWORKFORCE." However, the mark Tanda asserts does not begin with the capital letter "U", but rather, a design element that looks like two persons facing one another:

91264550. Defendants state that the filings made in Proceeding No. 91264550 speak for themselves, and Defendants deny any characterizations thereof.

47. On October 12, 2020, Tanda IP filed its Answer in the Opposition Proceeding and, *along with Tanda, Inc.*, filed a counterclaim against Plaintiff seeking cancellation of Plaintiff's U.S. Trademark Registration No. 4,608,651 for its WORKFORCE SOFTWARE mark (hereinafter, the "Cancellation Counterclaim"). The Cancellation Counterclaim is duplicative of the Cancellation Proceeding. In the Cancellation Counterclaim, Tanda and Tanda IP again claim that Plaintiff's '651 Registration for its WORKFORCE SOFTWARE mark must be cancelled because the mark is generic.

**ANSWER:** Defendants admit that, on October 12, 2020, Workforce.com and Workforce IP Limited filed a an Answer in the Opposition Proceeding that included a counterclaim seeking cancellation of Plaintiff's U.S. Trademark Registration No. 4,608,651, which speaks for itself and Defendants deny any characterizations thereof.

48. Plaintiff now files this civil action to address Defendants' infringement of Plaintiff's WORKFORCE™ SOFTWARE Marks and to fully and finally resolve the parties' dispute.

**ANSWER:** Defendants admit that Plaintiff filed the above-captioned action and have filed a First Amended Complaint in this action, which speaks for itself, and Defendants deny any characterizations thereof. Defendants deny they have infringed on any of Plaintiff's alleged trademarks, including the purported registration and common law marks, and deny that such alleged trademarks are valid or distinctive. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 48 and, therefore, deny them.

## COUNT I
### (Trademark Infringement in Violation of the Lanham Act, 15 U.S.C. § 1114)

49. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:** Defendants hereby incorporate their responses to Paragraphs 1-48 as if set forth in full herein.

50.     Defendants' unauthorized use of their confusingly similar WORKFORCE and Design marks in commerce constitutes a reproduction, copying, counterfeit, and colorable imitation of Plaintiff's WORKFORCE™ SOFTWARE Marks in a manner that is likely to cause confusion or mistake or is likely to deceive consumers.

**ANSWER:** Denied.

51.     Defendants' unauthorized use of their confusingly similar WORKFORCE and Design marks in commerce in connection with nearly identical software and consulting services constitutes infringement of Plaintiff's rights in its registered WORKFORCE™ SOFTWARE Marks,[3] as it likely to cause confusion or mistake, or to deceive, as to the origin, sponsorship or approval of Defendants' goods and services, in violation of 15 U.S.C. § 1114(1)(a).

**ANSWER:** Denied.

52.     As a direct and proximate result of Defendants' infringement of Plaintiff's WORKFORCE™ SOFTWARE Marks, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**ANSWER:** Denied.

53.     Defendants' willful and defiant disregard of Plaintiff's rights in the registered WORKFORCE™ SOFTWARE Marks makes this an exceptional case for which an award of Plaintiffs' reasonable attorneys' fees, costs, and damages is warranted.

**ANSWER:** Denied.

**COUNT II**
**(Common Law Trademark Infringement)**

54.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:** Defendants hereby incorporate their responses to Paragraphs 1-53 as if set forth in full herein.

55.     Defendants' unauthorized use of their confusingly similar WORKFORCE and Design marks in commerce constitutes an infringement of each of Plaintiff's WORKFORCE™ SOFTWARE Marks under the common law, including Plaintiff's WORKFORCE mark.

---

[3] Except for Plaintiff's "WORKFORCE" mark, which is unregistered.

**ANSWER:** Denied.

56. As a direct and proximate result of Defendants' infringement of Plaintiff's WORKFORCE™ SOFTWARE Marks, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**ANSWER:** Denied.

**COUNT III**
**(Federal Unfair Competition in Violation of**
**the Lanham Act U.S.C. § 1125(a))**

57. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:** Defendants hereby incorporate their responses to Paragraphs 1-56 as if set forth in full herein.

58. Defendants' unauthorized use of their confusingly similar WORKFORCE and Design marks in commerce constitutes a false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association between Plaintiff and Defendants, or as to the origin, sponsorship, or approval of Defendants' goods or services by Plaintiff.

**ANSWER:** Denied.

59. As a direct and proximate result of Defendants' unfair competition, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**ANSWER:** Denied.

**COUNT IV**
**(Common Law Unfair Competition)**

60. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:** Defendants hereby incorporate their responses to Paragraphs 1-59 as if set forth in full herein.

61. Defendants' unauthorized use of their confusingly similar WORKFORCE and Design marks in commerce constitutes unfair competition under the common law.

**ANSWER:** Denied.

62. As a direct and proximate result of Defendants' unfair competition, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**ANSWER:** Denied.

### COUNT V
### (Cybersquatting in Violation of
### the ACPA 15 U.S.C. § 1125(d))

63. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:** Defendants hereby incorporate their responses to Paragraphs 1-62 as if set forth in

full herein.

64. The Defendants have initially registered, re-registered, trafficked in, and/or used the domain name <workforce.com>.

**ANSWER:** Defendants admit that their predecessor-in-interest initially registered the domain

name workforce.com on February 22, 1994 and since that time, Defendants and/or their

predecessors-in-interest have continued to use and traffic in the workforce.com domain name.

Except as specifically admitted, Defendants deny the remaining allegations in Paragraph 64.

65. The <workforce.com> domain name is confusingly similar to Plaintiff's WORKFORCE™ SOFTWARE Marks, which became distinctive after Defendants' predecessors-in- interest initially registered, trafficked in, and/or used the domain name <workforce.com> in 1994, but which became distinctive before Defendants re-registered, trafficked in, and/or used the domain name <workforce.com> in bad faith. *See, e.g., Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 777 (11th Cir. 2015) ("It would be nonsensical to exempt the bad-faith re-registration of a domain name simply because the bad-faith behavior occurred during a noninitial registration, thereby allowing the exact behavior that Congress sought to prevent."); *Schmidheiny v. Weber*, 319 F.3d 581, 581-83 (3d Cir. 2003) ("the language of the statute does not limit the word 'registration' to the narrow concept of 'creation registration'" and "[t]he words 'initial' and 'creation' appear nowhere in [the statute].").

**ANSWER:** Denied.

66. Upon information and belief, the Defendants had a bad faith intent to profit from Plaintiff's WORKFORCE™ SOFTWARE Marks when they re-registered, trafficked-in, and/or used the domain name <workforce.com>. By re-registering, trafficking in, and/or using <workforce.com>, the Defendants have diverted consumers from Plaintiff's <workforcesoftware.com> domain to Defendants' <workforce.com> domain. In doing so,

Defendants have harmed the goodwill represented by Plaintiff's WORKFORCE™ SOFTWARE Marks, either for commercial gain or with the intent to tarnish or disparage Plaintiff's WORKFORCE™ SOFTWARE Marks by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Plaintiff's <workforce.com> website. Defendants' bad faith is further evidenced by the fact that Defendants utilized the services of Perfect Privacy, LLC to anonymously re-register <workforce.com> to hide their ownership of <workforce.com> from Plaintiff and from the purchasing public.

**ANSWER:** Denied.

67.    Upon information and belief, at no time did Defendants believe or have reasonable grounds to believe that their re-registration, trafficking-in, or use of the <workforce.com> domain was lawful.

**ANSWER:** Denied.

68.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**ANSWER:** Denied.

**COUNT VI**
**(Order Requiring Withdrawal of Pending**
**Trademark Application, 15 U.S.C. § 1119)**

69.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:** Count VI was dismissed with prejudice by the Court's Order of October 26, 2021.

*See* ECF No. 46.  Accordingly, no response to Paragraph 69 is required.

70.    In any action involving a registered mark, the Court may determine the right to registration. 15 U.S.C. § 1119.  This is an action involving Plaintiff's registered marks as well as Defendants' '073 Registration.

**ANSWER:** Count VI was dismissed with prejudice by the Court's Order of October 26, 2021.

*See* ECF No. 46.  Accordingly, no response to Paragraph 70 is required.

71.    In light of the Defendants' infringement of Plaintiffs' registered trademarks, the Court should order, pursuant to 15 U.S.C. § 1119, that Defendants withdraw from consideration for registration, Defendants' Application Serial No. 88/654,970, which seeks registration of Defendants' WORKFORCE and Design mark in International Class 9 for use in connection with "downloadable software for employee management and timeclocking;" and in International Class 42 for use in connection with, "providing online non-downloadable software for employee

management and timeclocking;" and "Software as a Service (SAAS) for employee management and timeclocking."

**ANSWER:** Count VI was dismissed with prejudice by the Court's Order of October 26, 2021.

*See* ECF No. 46. Accordingly, no response to Paragraph 71 is required.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court grant the following relief:

1. That the Court preliminarily and permanently enjoin and restrain Defendants, as well as their successors, assigns, officers, agents, and employees from:

    a. Infringing upon Plaintiff's trademarks, service marks, design marks, or trade names, including, but not limited to, Plaintiff's WORKFORCE™ SOFTWARE Marks;

    b. Registering, using, or trafficking in any domain name that is identical or confusingly similar to any of Plaintiff's WORKFORCE™ SOFTWARE Marks, including, but not limited to <workforce.com>; and

    c. Aiding or assisting any other third party in subsections 1(a) and 1(b) above;

2. That the Court order the transfer of the <workforce.com> domain name and any other domain name identical or confusingly similar to Plaintiff's WORKFORCE™ SOFTWARE Marks to Plaintiff;

3. That the Court award Plaintiff its actual damages, lost profits, consequential damages, statutory damages, and any other damages allowable under law;

4. That the Court award Plaintiff its costs and attorneys' fees;

5. That the Court enter an order requiring Defendants to withdraw their Application Serial No. 88/654,970 from consideration for registration by the USPTO;

6. That the Court declare the validity of Plaintiff's U.S. Trademark Registration No. 4,608,651; and

7. That the Court award Plaintiff any other relief to which it is entitled at law or in equity.

**ANSWER:** The prayer for relief is not subject to admission or denial. To the extent a response

is required, Defendants deny that Plaintiff is entitled to any relief whatsoever, including each and

every subparagraph contained within the prayer for relief. Further, Defendants deny each and

every material allegation in the Complaint not heretofore controverted and demands strict proof thereof.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**ANSWER:** Defendants admit that Plaintiff has demanded trial by jury on all issues triable.

## AFFIRMATIVE DEFENSES

Without prejudice to the denials set forth above, and without admitting any of Plaintiff's allegations not otherwise admitted, and without undertaking any of the burdens imposed by law against Plaintiff, Defendants assert the following affirmative defenses to Plaintiff's claims:

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Claim)**

The Amended Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
**(Laches)**

Plaintiff's claims are barred in whole or in part under the doctrine of laches.

### THIRD AFFIRMATIVE DEFENSE
**(Waiver)**

Plaintiff's claims are barred in whole or in part under the doctrine of waiver.

### FOURTH AFFIRMATIVE DEFENSE
**(Estoppel)**

Plaintiff's claims are barred in whole or in part under the doctrine of estoppel.

### FIFTH AFFIRMATIVE DEFENSE
**(Acquiescence)**

Plaintiff's claims are barred in whole or in part by Plaintiff's acquiescence.

## SIXTH AFFIRMATIVE DEFENSE
### (Genericness)

The phrase "workforce software" and the term "workforce" are generic and are necessary to accurately describe the subject matter of Defendants' and other third parties' employee management and timeclocking software and services relating thereto. Plaintiff's claims are barred because the alleged trademarks are generic. Additionally, Plaintiff's registrations alleged in the Complaint are improperly issued by the USPTO and invalid because "workforce software" is generic.

## SEVENTH AFFIRMATIVE DEFENSE
### (Merely Descriptive and Invalid)

Plaintiff does not have common law rights in "workforce" or "workforce software" and the registrations are invalid because the terms are merely descriptive of employee management and timeclocking software and services relating thereto and have not acquired distinctiveness.

## EIGHTH AFFIRMATIVE DEFENSE
### (Unregistered Mark)

Any trademark claim brought under the Lanham Act with respect to the term "workforce" alone is barred because 15 U.S.C. § 1114 only provides a cause of action for a registered trademark.

## NINTH AFFIRMATIVE DEFENSE
### (Good Faith)

Plaintiff's claims fail to the extent that, at all relevant times, Defendants' actions were taken in good faith and with a reasonable belief that the use of the workforce.com domain name was otherwise lawful and without malice or willful intent in relation to Defendants' use of Defendants' marks.

## RESERVATION OF DEFENSES

Defendants reserve their right to rely on any additional affirmative defenses as may become available or apparent during discovery, and thus reserve their right to amend the Answer to assert such additional defenses, or otherwise to rely on additional or other defenses during this case or at the time of trial.

## COUNTERCLAIM

Pursuant to Federal Rule of Civil Procedure 13, Workforce.com, Inc. ("Workforce.com") and HCMA, Inc. ("HCMA") (collectively "Counterclaim-Plaintiffs") hereby file this Counterclaim and allege against Counterclaim-Defendant Workforce Software, LLC ("WFS") as follows:

## PARTIES

1.      Counterclaim-Plaintiff Workforce.com is a Delaware corporation with its principal place of business at 150 N. Michigan Ave., Suite 550, Chicago, IL, 60601.

2.      Counterclaim-Plaintiff HCMA is a Delaware corporation whose principal place of business is located at 150 N. Michigan Avenue, Suite 550, Chicago, IL, 60601.

3.      Counterclaim-Defendant WFS is a Delaware limited liability company whose principal place of business is located at 38705 Seven Mile Road, Livonia, Michigan, 48152.

## JURISDICTION AND VENUE

4.      These counterclaims arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

5.      This Court has original jurisdiction over the subject matter of Counterclaim-Plaintiff's action pursuant to 15 U.S.C. §§ 1119 and 1121(a) and 28 U.S.C. §§ 1331, 1338(a), and 2201.

6.      By filing its Amended Complaint, Counterclaim-Defendant WFS has consented to the personal jurisdiction of this Court.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391.

## FACTUAL BACKGROUND

**Counterclaim-Plaintiffs' Business and WORKFORCE Trademarks**

8.      Counterclaim-Plaintiffs, themselves or through their related companies, are in the business of offering, promoting, marketing, and advertising, printed and online publications in the field of employment and human resources, as well as a market-leading technology platform that includes software for employee management and timeclocking, and other related goods and services.

9.      Since at least as early as 1997, Counterclaim-Plaintiffs and their predecessors-in interest have used the trademark WORKFORCE in connection with publications and other related goods and services.

10.      Counterclaim-Plaintiffs also use the trademark UWORKFORCE & Design (depicted below) in connection with their market-leading technology platform that includes software for employee management and timeclocking:



**WFS's Business And Alleged WORKFORCE SOFTWARE Mark**

11.      Upon information and belief, Counterclaim-Defendant WFS offers workforce management software and consulting services relating to the implementation of workforce management software.

12.    On its "About Us" landing page on its website, WFS advertises a claim that, in the industry, it has been rated as "#1 vendor for workforce management software":



(*See* https://www.workforcesoftware.com/about-us/, last accessed Nov. 9, 2021.)

13.    In press releases, WFS has called itself "the leader in workforce management software":

### About WorkForce Software

WorkForce Software is the leader in workforce management software for organizations with complex policies and compliance concerns. Its EmpCenter® suite enables organizations to fully automate time & attendance processes, effectively manage employee absence and leave, optimize staff scheduling, gain real-time visibility into labor costs and activities through robust analytic and reporting tools, and mitigate the risks associated with employee fatigue across the enterprise. Hundreds of leading organizations, including the University of California, Blizzard Entertainment, AMF Bowling, Duke Energy and BBVA Compass, rely on EmpCenter to streamline compliance, reduce payroll costs, provide more intuitive tools to their employees, and achieve strategic HR on a global basis.

# # #

(*See* https://www.workforcesoftware.com/press-release/2012/adventist-health-system-selects-workforce-softwares-empcenter-suite-to-transform-enterprise-wide-workforce-management/, last accessed Nov. 9, 2021.)

14.    In promoting its services on its website, WFS has also stated that "[m]odern workforce management software helps every employee in your organization work smarter":



(*See* https://www.workforcesoftware.com/blog/6-workforce-management-issues-2017/, last accessed Nov. 9, 2021.)

15.     Other statements by WFS on its website and elsewhere confirm that "workforce software" is a key aspect and a central focus of WFS's services.

16.     WFS is the owner of the following registrations in which it has disclaimed the exclusive right to use of the term "workforce software" in connection with the same services as those covered by Reg. No. 4,608,651:

| Reg. No. | Mark | Goods/Services | Disclaimer |
|---|---|---|---|
| 4,681,022 |  | Cl. 42: Consulting services related to implementation of computer software and programs for others | "Workforce Software" |
| 4,830,531 |  | Cl. 42: Consulting services related to implementation of computer software and programs for others Cl. 9: Computer software for timekeeping and workforce management, namely, for tracking, recording, analyzing and managing the time and activities of employees, contractors, contingent workers and other staff | "Workforce Software Company" |

| 5,249,285 | wfs A WORKFORCE SOFTWARE COMPANY | Cl. 42: Consulting services related to implementation of computer software and programs for others. Cl. 9: Computer Software for timekeeping and workforce management, for tracking, recording, analyzing and managing the time and activities of employees, contractors, contingent workers and other staff. Cl. 35: Business planning; business strategic planning services; business management consultancy as well as development of processes for the implementation of strategy plans and management projects; structuring, optimizing, and change management consulting related to timekeeping and scheduling; | "Workforce Software Company" |

| | | business organization and management consultancy including personnel management. | |
|---|---|---|---|

17.    During the prosecution of Reg. No. 4,681,022, the examining attorney at the U.S. Patent Trademark Office ("PTO") required that WFS "disclaim the wording 'Workforce Software' because it is a generic designation for applicant's goods and/or services and is thus an unregistrable component of the mark."

18.    Reg. No. 4,681,022 disclaims "THE EXCLUSIVE RIGHT TO USE 'WORKFORCE SOFTWARE' APART FROM THE MARK AS SHOWN," which "consists of [] the word 'WorkForce' with the 'W' and 'F' in capital letters and the other letters in lower case with a line with an arrow on the end going through the letters 'o' through 'e' of 'Force'; below the work 'WorkForce' is the word 'Software' in all capital letters."

19.    The PTO has also required that WFS disclaim any exclusive right to "Workforce Software Company." (*See* Reg. Nos. 4,830,531 and 5,249,285.)

20.    Reg. No. 4,830,531 disclaims "THE EXCLUSIVE RIGHT TO USE 'WORKFORCE SOFTWARE COMPANY' APART FROM THE MARK AS SHOWN," which "consists of upper case letters 'WFS' with a line with an arrow on the end going through the letters with the words 'A WorkForce Software Company' below it."

21.    Reg. No. 5,249,285 disclaims "THE EXCLUSIVE RIGHT TO USE 'WORKFORCE SOFTWARE COMPANY' APART FROM THE MARK AS SHOWN," which "consists of 'wfs' seperated [*sic*] by a vertical line with 'a workforce software company' on the right side."

22.     In its Reg. Nos. 4,830,531 and 5,249,285, WFS states that the alleged marks on their face identify WFS as "a workforce software company."

23.     Therefore, WFS's Reg. Nos. 4,830,531 and 5,249,285 confirm the genericness of the phrase "workforce software."

24.     WFS has also conceded that its use of the term "workforce" is descriptive by disclaiming it (in addition to software) from three registrations it attached to the First Amended Complaint. (*See* Exs. B-D attached to the First Amended Complaint.)

25.     A review of the PTO register returns at least 50 live trademarks that include the term "workforce" and are used in connection with identical and/or similar software, including registrations that predate WFS, including but not limited to: Reg. No. 2,567,915 (WORKFORCE CENTRAL); Reg. No. 2,625,552 (WORKFORCE ACCRUALS); Reg. No. 4,610,989 (WORKFORCE TODAY); and Reg. No. 4,481,262 (ADVANTAGE WORKFORCE).

26.     The PTO has also required many of these third party registrations to disclaim any exclusive rights in the term "workforce".

27.     Moreover, the field of alleged "Workforce"-formative marks in connection with identical and related goods is crowded, such that no one company may claim the exclusive right to use the term "Workforce."

28.     Despite the genericness of the phrase "workforce software," and Counterclaim-Plaintiffs' and their predecessors-in-interest's longstanding use of WORKFORCE, on February 20, 2020, WFS sent Counterclaim-Plaintiffs a cease-and-desist letter in which it attempted to exclude Counterclaim-Plaintiffs from use of the terms "workforce" and "workforce software" based on its alleged rights in Registration 4,608,651.

29.     This attempt to exclude Counterclaim-Plaintiffs from use of the term "workforce" and phrase "workforce software" was improper.

30.     Thereafter, Counterclaim-Plaintiff Workforce.com responded to WFS's letter and filed a petition for cancellation with the PTO, seeking cancellation of WFS's Reg. No. 4,608,651 covering "workforce software" as generic.

## COUNTERCLAIM

**(Trademark Registration Cancellation Under 15 U.S.C. §§ 1064 and 1119)**

31.     Counterclaim-Plaintiffs reallege and incorporate Paragraphs 1 – 30 as though fully set forth herein.

32.     In response to Counterclaim-Defendant WFS's trademark infringement claims, predicated on U.S. Trademark Registration No. 4,608,651 for WORKFORCE SOFTWARE, Counterclaim-Plaintiffs request the Court declare WORKFORCE SOFTWARE invalid because it is generic, or at most merely descriptive for WFS's "consulting services related to implementation of computer software and programs for others" and without secondary meaning.

33.     WFS is not entitled to exclusive use of the phrase "workforce software" or the term "workforce" in commerce for the services specified in Registration No. 4,608,651.

34.     The relevant public does not recognize the phrase "workforce software" as a source indicator.

35.     The phrase "workforce software" is generic because its primary significance to the relevant public is the identification of both a key aspect and a central focus of WFS's "consulting services related to implementation of computer software and programs for others."

36.     WFS's own use and registrations confirm that that the phrase "workforce software" is a key aspect and central focus of its services, and that the phrase is not an indication of source.

37.     The phrase "workforce software" is incapable of acquiring distinctiveness under §
2(f).  *See* 15 U.S.C. § 1052(f).

38.     The phrase "workforce software" and the term "workforce" are necessary to
accurately describe the subject matter of Counterclaim-Plaintiffs' and other third parties' employee
management and timeclocking software and services relating thereto.

39.     If WFS were allowed to continue to maintain its registration for WORKFORCE
SOFTWARE, WFS would be able to continue to attempt to improperly obstruct Counterclaim-
Plaintiffs' as well as other third parties' use of the term "workforce" and the phrase "workforce
software."

40.     Because the phrase "workforce software" is incapable of serving as an indicator of
source, Counterclaim-Plaintiffs request that the Court declare the invalidity of and cancel WFS's
Registration No. 4,608,651.

41.     U.S. Trademark Registration No. 4,608,651 is not entitled to registration, and the
alleged WORKFORCE SOFTWARE trademark is not a valid trademark, either under statute or at
common law.

42.     Counterclaim-Plaintiffs have been and will continue to be damaged by the
continued registration of the generic phrase WORKFORCE SOFTWARE covered by Registration
No. 4,608,651.

## **PRAYER FOR RELIEF**

43.     Counterclaim-Plaintiffs respectfully pray that Registration No. 4,608,651, be
cancelled.

## **DEMAND FOR JURY TRIAL**

44.     Pursuant to Federal Rule of Civil Procedure 38(b), Counterclaim-Plaintiffs hereby

demand a trial by jury of all issues so triable.


Dated: November 9, 2021                            Respectfully submitted,

                                          s/ *Kristina K. Cercone*
                                          JONES DAY (Firm ID 39805)
                                          Kristina Katz Cercone (6306298)
                                          kcercone@jonesday.com
                                          77 West Wacker Drive
                                          Chicago, IL  60601-1692
                                          Telephone:  (312) 782-3939

                                          John G. Froemming (admitted *pro hac vice*)
                                          jfroemming@jonesday.com
                                          JONES DAY
                                          51 Louisiana Ave. NW
                                          Washington, DC  20001
                                          Office (202) 879-4693
                                          Fax (202) 626-1700

                                          *Counsel for Defendants Workforce.com, Inc.,*
                                          *and HCMA, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on November 9, 2021, the foregoing document was filed electronically through the Court's Electronic Case Filing System.  Service of this document is being made upon all counsel of record in this case by the Notice of Electronic filing issued through the Court's Electronic Case Filing system on this date.

/s/ *Kristina K. Cercone*
Kristina K. Cercone